```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
```
**LEXINGTON**

| | |
|---|---|
| JAMES TUREK ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 5:06-53-JMH |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION AND ORDER** |
| MOLD-RITE TOOL, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

\*\*     \*\*     \*\*     \*\*     \*\*

Pending before the Court is Defendants Mold-Rite, Inc. and Plast-O-Foam LLC's motion to dismiss Plaintiff James Turek's complaint [Record No. 2]. Turek filed a response [Record No. 3], to which Defendants replied [Record No. 4]. Also pending before the Court is Defendants' motion to dismiss Plaintiff International Plastics Corp.'s complaint [Record No. 8 in Action No. 5:06-cv-223].[1] International Plastics Corp., presently known as Plasticon International, Inc. ("Plasticon"), responded to the motion [Record No. 9], and Defendants filed a reply [Record No. 11]. As both motions are fully briefed, this matter is ripe for review.[2]

---

[1] On October 19, 2006, the Court consolidated Action No. 5:06-cv-53 and Action No. 5:06-cv-223 [Record No. 7].

[2] Turek filed his complaint in Fayette Circuit Court. Defendants subsequently removed the case to this Court, citing the Court's diversity jurisdiction and noting that Turek is a citizen of Kentucky, Mold-Rite is a Michigan corporation with its principal place of business in Fraser, Michigan, and Plast-O-Foam is a Michigan corporation with its principal place of business in Troy,

I.  BACKGROUND

Plasticon owns certain patented molds and associated tools and parts used in the processing and manufacturing of, among other things, rebar supports. Turek was president, shareholder, and personal guarantor of certain indebtedness of Plasticon. Plasticon developed a working relationship[3] with General Plastics Corporation ("GPC"), a now dissolved corporation,[4] whereby Plasticon granted GPC possession of the molds to produce rebar supports in Michigan for Plasticon's use. Plaintiffs do not dispute that GPC was a Michigan corporation with its principal place of business in Fraser, Michigan. Subsequently, and without Plasticon's permission, GPC moved the molds to Defendant Mold-Rite's facility in Michigan. Plasticon claims that Mold-Rite refused its repeated demands for the return of the molds and demanded money from Plasticon.

---

Michigan.
  Plasticon, which states that its principal place of business is in Lexington, Kentucky, filed its complaint in this Court, citing diversity jurisdiction under 28 U.S.C. § 1332.

[3] How this "working relationship" began is not spelled out in the complaint or papers associated with the instant motions. It would appear, however, that the contracts were signed in Michigan based on the affidavit of Mark Blanchard, Vice President of Mold Rite.

[4] General Plastics Corporation, a Michigan corporation, was named as a defendant in Turek's and Plasticon's complaints but has not received service of process of either complaint. Rick Michael, a citizen of Michigan, was also named as a defendant in the complaints but has not received service of process of either complaint.

Plasticon claims that after its demands were refused by Mold-Rite, it was forced to do business with Mold-Rite due to Plasticon's obligations to customers and financial pressure. Plaintiffs allege that when Plasticon and Mold-Rite entered into certain agreements, Mold-Rite made misrepresentations to Plaintiffs. Plaintiffs contend that these misrepresentations were directed to them in Kentucky by telephone, facsimile, and written correspondence from Mold-Rite.

In defiance of their agreement and without Plasticon's permission, Mold-Rite (1) purchased certain raw materials from a supplier, (2) molded parts using Plasticon's molds for Plasticon's customers and other customers, and (3) failed to ship products within the agreed upon time limit.

According to Plasticon, without Plasticon's permission and in violation of their agreement, Mold-Rite moved the molds to its affiliate Defendant Plast-O-Foam's facility in Michigan. Plasticon alleges that Mold-Rite has not paid it for products molded with Plasticon's molds and would not agree to preset prices for molded parts, which prevented Plasticon from accurately quoting prices to its customers.

In their complaints, Plaintiffs bring the following claims against Defendants: breach of contract, civil conspiracy, conversion, interference with contractual relations, and fraud and misrepresentation. In response, Defendants Mold-Rite and Plast-O-

Foam filed motions to dismiss, arguing that this Court lacks personal jurisdiction over them. To these motions the Court now turns.

## II. DISCUSSION

Plaintiffs "need only make a prima facie showing of jurisdiction." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). To meet this burden, they must establish "with reasonable particularity sufficient contacts between [Defendants] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (citation omitted). In reviewing Defendants' motions to dismiss pursuant to Rule 12(b)(2), this Court relies on the pleadings and affidavits of the parties and construes the facts in the light most favorable to the nonmoving parties, the plaintiffs. *See Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

This Court may exercise personal jurisdiction over a defendant in a diversity case only if such jurisdiction is (1) authorized by Kentucky law and (2) otherwise consistent with the Due Process Clause of the Fourteenth Amendment. *See Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003). Kentucky's long-arm statute provides in pertinent part:

> (2) (a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:
> 1. Transacting any business in this Commonwealth;
> 2. Contracting to supply services or goods in this Commonwealth;

4

> 3. Causing tortious injury by an act or omission in this Commonwealth;
> 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth . . . .

KRS § 454.210(2)(a).

Kentucky courts construe the state's long-arm statute as coextensive with the limits of due process. *Wilson v. Case*, 85 S.W.3d 589, 592 (Ky. 2002). The Court may exercise jurisdiction over Defendants if personal jurisdiction is consistent with the requirements of federal due process. Therefore, personal jurisdiction exists in the case *sub judice* if Defendants have "minimum contacts" with Kentucky "'such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Gateway Press, Inc. v. LeeJay, Inc.*, 993 F. Supp. 578, 580 (W.D. Ky. 1997) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Through its long-arm statute, "Kentucky has elected to assume personal jurisdiction over a nonresident tort-feasor whose activities outside the state result in injury in this state only if that tort-feasor regularly does or solicits business within the state or has other substantial connection to the Commonwealth." *Pierce v. Serafin*, 787 S.W.2d 705, 707 (Ky. Ct. App. 1990), *quoted*

in *Auto Channel, Inc. v. Speedvision Network, LLC*, 995 F. Supp. 761, 764 (W.D. Ky. 1997). The Kentucky Supreme Court has explained that "[i]n practice, the precise language of the statute and the application of its terms are much less important than the simple fact that the statute exists." *Wilson*, 85 S.W.3d at 592. "Courts have determined that 'the long-arm statute within this jurisdiction allows Kentucky courts to reach to the full constitutional limits of due process in entertaining jurisdiction over non-resident defendants.'" *Id.* (quoting *Mohler v. Dorado Wings, Inc.*, 675 S.W.2d 404, 405 (Ky. Ct. App. 1984)).

The Court's exercise of personal jurisdiction is subject to due process limitations. Specific jurisdiction exists where the claims in the case arise from or are related to the defendant's contacts with the forum state. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997).[5] The Court addresses three criteria to determine if an exercise of specific jurisdiction is proper. First, Defendants must have purposefully availed themselves of the privilege of acting in Kentucky or purposefully caused a consequence in the state. Next, the cause of action must arise from Defendants' actions in Kentucky. Finally,

---

[5] General jurisdiction, on the other hand, exists when a defendant's "contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002). Plaintiffs have based their prima facie case of personal jurisdiction on specific jurisdiction.

the exercise of jurisdiction must be reasonable. *See Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 628 (6th Cir. 1998); *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968); *Wilson*, 85 S.W.3d at 592.

A court may not exercise *in personam* jurisdiction if the defendant has not purposefully entered into a connection with the forum state "such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)(citations omitted).

Plaintiffs submitted an affidavit sworn to by Turek that essentially repeats the allegations in the complaints. Defendants presented the affidavits of Mark Blanchard, Vice President of Mold Rite, and Andy Watts, General Manager of Plast-O-Foam. Blanchard attested that Mold-Rite and Plasticon negotiated and entered into a contract while he was in Fraser, Michigan; that all activities performed by Mold-Rite pursuant to that contract were conducted in Michigan, not in Kentucky; that Mold-Rite does not have a post office box, business address, telephone number, or office in Kentucky; and that Mold-Rite's officers and employees have not worked in Kentucky or visited Kentucky for the purpose of

transacting business with Plaintiffs. Similarly, in his affidavit, Watts stated that Plast-O-Foam does not have a post office box, business address, telephone number, or office in Kentucky and that Plast-O-Foam's officers and employees have not worked in Kentucky or visited Kentucky for the purpose of transacting business with Plaintiffs. Both affiants noted that Defendants are Michigan corporations who are neither authorized to do business in Kentucky nor have agents for service of process in Kentucky.

In Plasticon's response, it emphasized Defendants' use of facsimile, written, and telephone correspondence to direct "economic threats" to Plaintiffs. Plaintiffs compared the facts of the case *sub judice* to those in *Neal v. Janssen*, 270 F.3d 328 (6th Cir. 2001), a case in which a Tennessee plaintiff sued a Belgian defendant for fraud and breach of fiduciary duty. The Belgian had agreed by telephone and fax to sell the Tennessean's horse at a certain price but allegedly sold the horse at a much higher price and kept the surplus for himself. *Id.* at 330. As noted by the court, pursuant to Tennessee's long-arm statute, "'if a tortious act is committed outside the state and the resulting injury is sustained within the state, the tortious act and the injury are inseparable, and jurisdiction lies in Tennessee.'" *Id.* at 331 (citing Tenn. Code Ann. § 20-2-214(a)). The Sixth Circuit found that personal jurisdiction existed in Tennessee and held that when the "actual content of the communications into the forum gives rise

to an intentional tort action, that alone may constitute purposeful availment." *Id.* at 332. The court continued, "It is the quality of the contacts, not the quantity, that determines whether they constitute 'purposeful availment.'" *Id.*

Discussing *Neal* and *Calder v. Jones*, 465 U.S. 783 (1984), the court in *D.C. Micro Development, Inc. v. Lange*, 246 F. Supp. 2d 705 (W.D. Ky. 2003), noted that "[t]he Supreme Court and the Sixth Circuit have both recognized that the analysis shifts slightly when the application of the purposeful availment prong turns on a tort or fraud-based claim." *Id.* at 710. In this case, Plaintiffs have alleged fraud and misrepresentation claims against Defendants, along with claims for breach of contract, civil conspiracy, conversion, and interference with contractual relations. Plaintiffs characterize the telephone, facsimile, and written communications received from Defendants as forming the "bases" of their fraud and misrepresentation claims. Plaintiffs contend that Defendants made the following misrepresentations:

> Plasticon would be paid monies for the use of the Molds and products made by Defendants, that Defendants would abide by the terms of the coerced limited agreements, including, but not limited to, timely delivery of products to Plasticon's customers, that Defendants had no further Molds in their possession after delivery per the Court's order, that Defendants would advise Plasticon of work they were doing using Plasticon's Molds, and that Defendants would not use Plasticon's Molds for their own benefit.

(Compl. ¶ 83.)

The issue presented to this Court is whether the Court is

within the limits imposed by Kentucky's long-arm statute and the Due Process Clause when it exercises personal jurisdiction over the Michigan Defendants based on Plaintiffs' efforts to show Defendants' connections with Kentucky.

Plaintiffs have simply not met the requirements of Kentucky's long-arm statute. Although Plaintiffs claim that they have satisfied KRS § 454.210(2)(a), upon review of the statute, the Court disagrees. According the court in *Powers v. Park*, 192 S.W.3d 439 (Ky. Ct. App. 2006), "The regular solicitation or conduct of business in Kentucky is not exclusively a requirement for the exercise of general jurisdiction; it is also necessary when the act that caused the alleged tortious injury did not occur in Kentucky." *Id.* at 443.

It is Plaintiffs' burden to establish that personal jurisdiction exists, *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir. 1988), and Plaintiffs have not shown that any of Defendants "regularly does or solicits business" in Kentucky, or "engages in any other persistent course of conduct" in Kentucky, or "derives substantial revenue from goods used or consumed or services rendered" in Kentucky. KRS § 454.210(2)(a).

Plaintiffs do not claim that Defendants have any business operations whatsoever within Kentucky and have not asserted that their contract with Plaintiffs was solicited, negotiated, and/or executed in Kentucky. Plaintiffs assert that Defendants have

derived substantial wealth from using their molds in Michigan but fail to allege that the wealth was derived "from goods used or consumed or services rendered in this Commonwealth." Contrary to Plaintiffs' assertions, it is immaterial that the molds were created by a Kentucky company.

*A. Whether Defendants Purposefully Availed Themselves of the Privilege of Acting in Kentucky or Purposefully Caused a Consequence There*

Construing the facts in the light most favorable to the plaintiffs, the Court finds that Plaintiffs have not made a prima facie showing that Defendants purposefully availed themselves of "the benefits and protections" of Kentucky's law. *See Burger King*, 471 U.S. at 475. Plaintiffs have not shown that Defendants maintain offices or have employees in Kentucky or that Defendants' employees have ever traveled to Kentucky to conduct business there. *See id.* at 473; *Kerry Steel*, 106 F.3d at 151.

In Plaintiffs' descriptions of wrongdoing by Defendants — wrongfully retaining possession of the molds, moving the molds without permission, producing products with the molds without paying Plaintiffs, demanding monies from Plaintiffs, selling products without Plaintiffs' permission — they do not state that any of these activities occurred in Kentucky. Plaintiffs complain that Defendants' out-of-state activities led to in-state consequences — Plaintiffs' lost revenue, customers, etc. But these claims of loss that occurred in Kentucky do nothing to bolster

Plaintiffs' personal jurisdiction argument. *See LAK, Inc.*, 885 F.2d at 1303 ("[T]he locus of such a monetary injury is immaterial, as long as the obligation did not arise from 'a privilege the defendant exercised in [the forum state].'" (quoting *Hanson v. Denckla*, 357 U.S. 235, 251 (1958))). Despite Plaintiffs' reliance on *Neal* and *Calder*, Plaintiffs have not shown that Kentucky's long-arm statute would permit the exercise of jurisdiction over Defendants nor have they shown that Defendants have purposefully availed themselves of the privilege of acting or causing a consequence in Kentucky such that they should have reasonably expected to be haled into a Kentucky court.

*B. Whether Plaintiffs' Claims Arise from Defendants' Contacts with Kentucky*

"The 'arising from' requirement under the second prong is satisfied when the operative facts of the controversy arise from the defendant's contacts with the state." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723-24 (6th Cir. 2000). Plaintiffs do not present any evidence that their cause of action arose from Defendants' activities in Kentucky. In fact, Plaintiffs do not dispute that the events that led to their claims that Defendants wrongfully held, used, and moved Plasticon's molds took place in Michigan.

*C. Whether the Exercise of Jurisdiction is Reasonable*

During the final prong of the analysis, the Court examines a defendant's overall contacts with the state, considering whether

those connections make jurisdiction over the nonresident defendant reasonable. *See Aristech*, 138 F.3d at 629 ("Whether the exercise of jurisdiction is reasonable ultimately depends on whether Kentucky has an interest in resolving the dispute between [the parties]."). Based on Plaintiffs' allegations, Defendants entered into an agreement with Plasticon, a company whose principal place of business was in Lexington, Kentucky. Entering into a contract with a Kentucky resident is not substantial enough to support jurisdiction. *See, e.g.*, *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 795 (6th Cir. 1996) ("The Supreme Court has also recognized, however, that the existence of a contract with a citizen of the forum state, standing alone, will not suffice to confer personal jurisdiction over a foreign defendant." (citing *Burger King*, 471 U.S. at 478)). The Court finds that Kentucky does not have an interest in resolving the dispute between Plaintiffs and Defendants, and as such, the exercise of jurisdiction by this Court would not be reasonable. On the other hand, bringing suit against the defendants in Michigan, where the defendants are residents and where the alleged misappropriation of Plaintiffs' molds took place, would result in a reasonable exercise of jurisdiction over Defendants.

### III. CONCLUSION

Accordingly, and for the foregoing reasons, **IT IS ORDERED:**

(1) That Defendants' motions to dismiss [Record No. 2] and

13

[Record No. 8 in Action No. 5:06-cv-223] be, and the same hereby are, **GRANTED;**

(2) That Plaintiff James Turek's and Plaintiff Plasticon International Inc.'s claims be, and the same hereby are, **DISMISSED WITHOUT PREJUDICE.**

This the 26th day of October, 2006.



Signed By:
*Joseph M. Hood*
United States District Judge